UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RUPINDER SINGH,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 2:20-cv-01467 AC

**ORDER**

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1] For the reasons that follow, plaintiff's motion for summary judgment will be DENIED, and defendant's cross-motion for summary judgment will be GRANTED.

I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on November 20, 2017. Administrative Record ("AR") 96.[2] The disability onset date was alleged to be March 16, 2017. Id. The application was disapproved

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).

[2] The AR is electronically filed in readable format at ECF No. 12-2 (AR 1 to AR 1009).

initially and on reconsideration. AR 21. On February 28, 2019, ALJ Judith A. Kopec presided over the hearing on plaintiff's challenge to the disapprovals. AR 39-75 (transcript). Plaintiff, who appeared with counsel Harvey P. Sackett, testified at the hearing. AR 39-40. Susan Allison, a Vocational Expert ("VE"), also testified at the hearing. Id.

On May 15, 2019, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 21-35 (decision), 36-38 (exhibit list). On June 11, 2020, after receiving Exhibit 11B, Request for Review of the Hearing Decision, as an additional exhibit, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision and additional exhibit list).

Plaintiff filed this action on July 21, 2020. ECF No. 1; see 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the magistrate judge. ECF No. 10. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 17 (plaintiff's summary judgment motion), 18 (Commissioner's summary judgment motion).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1972, and accordingly was, at age 45, a younger person under the regulations at the time of the alleged onset of disability.[3] AR 55. Id. Plaintiff has at least a high school education and can communicate in English; his primary language is Punjabi. AR 33, 194, 196. Plaintiff worked intermittently as a trucker beginning in January 2007 and most recently ending in March 2017. AR 196.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

[3] See 20 C.F.R. § 404.1563(c) ("younger person").

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

////

////

IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

disabled”), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, “[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy.” Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

V. THE ALJ’s DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.
>
> 2. [Step 1] The claimant engaged in substantial gainful activity during the following periods: October 2018, November 2018, and December 2018 (20 CFR 404.1520(b) and 404.1571 *et seq.*).
>
> 3. [Step 1 cont’d] However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.
>
> 4. [Step 2] The claimant has the following severe impairments: major depressive disorder with psychotic features, congestive heart failure status post coronary artery bypass, diabetes mellitus, and history of myocardial infarction (20 CFR 404.1520(c)).
>
> 5. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 6. [Residual Functional Capacity (“RFC”)] After careful consideration of the entire record, I find that that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can lift, carry, push, and/or pull 10 pounds frequently and 20 pounds occasionally; sit, stand, and walk for up to 6 hours out of 8; can never climb ladders, ropes, or scaffolds; frequently climb ramps and stairs; cannot be exposed to unprotected heights or dangerous machinery; can occasionally operate a motor vehicle; can perform simple, routine tasks; can occasionally make routine work-related decisions and adapt to routine challenges in the work environment or work process; can occasionally have one-to-one public contact; can occasionally be a part of a work team that requires regularly working directly with others to accomplish a task.
>
> 7. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 8. [Step 5] The claimant was born [in 1972] and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

> 9. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 10. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 11. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are job that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).
>
> 12. The claimant has not been under a disability, as defined in the Social Security Act, from March 16, 2017, through the date of this decision (20 CFR 404.1520(g)).

AR 23-34.

As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act. AR 34.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred by (1) failing to accurately capture his mental limitations in the RFC findings; (2) improperly rejecting his subjective testimony; (3) improperly rejecting his wife's lay witness testimony; and (4) not supporting Step Five with substantial evidence. ECF No. 17-1. Plaintiff contends the errors were harmful, and that the case should be remanded to the Commissioner for and immediate award of benefits or for further proceedings. Id. at 18.

### A. The ALJ Properly Addressed Mental Limitations

Plaintiff contends that there is a conflict between the findings of two properly credited mental health examiners, Dr. Dalton and Dr. Pinkston, and the RFC. ECF No. 17-1 at 7. ECF No. 17-1 at 18. The undersigned disagrees because plaintiff's argument proceeds from a misreading of the transcript.

On January 17, 2018, at the initial determination stage of plaintiff's case, State agency consulting psychologist Brady Dalton, Psy.D., issued a mental health assessment. AR 81-82. Dr. Dalton reviewed the claim file and opined that "[w]hile no significant cognitive impairments are evident, benefit of the doubt is given to [claimant] and moderate impairments (E2, B3, B4)

considered possible suggesting overall mental capacity is adequate for simple tasks in routine settings with limited social demands." AR 82. Dr. Dalton found plaintiff had mild limitations in his ability to understand, remember, or apply information, and moderate limitations in his ability to interact with others, concentrate, persist, or maintain pace, and adapt or manage himself. AR 80.

In the Mental Residual Functional Capacity (MRFC) section of the form, Dr. Dalton rated various categories of functional performance related to work settings and then offered a narrative explanation of plaintiff's capacities for concentration and persistence, social interaction, and adaptation. AR 89-91. Dr. Dalton found that Plaintiff was "[n]ot significantly limited" in either simple or detailed tasks, and explained in the narrative that plaintiff had "sufficient ability to complete simple instructions, to follow directions without additional assistance, and to maintain adequate attention, concentration, persistence, and pace as needed to complete a full work day/work week." AR 90. Dr. Dalton found plaintiff moderately limited in some social areas and explained that he could "sustain work that does not require more than occasional public contact or collaborative effort." AR 90-91. Considering plaintiff's adaptation limitations, Dr. Dalton found plaintiff moderately limited, stating he "would work best in structured environments with predictable work tasks and with minimal social contacts with others that do not require a great deal of decision-making or goal setting." AR 91.

At the reconsideration level, State agency psychologist James Pinkston, Ph.D. was asked by the agency reviewer to "[p]lease assess" if "[t]he evidence is consistent [with the] initial decision that [Plaintiff] is limited to simple 1-2 step tasks [with] limited public contact." AR 99. However, Dr. Dalton did not give such an opinion at the initial stage. The question posed to Dr. Pinkston is not itself a finding made by a medical reviewer. In response to that question, Dr. Pinkston gave the same ratings in the special technique and the same narrative explanation as Dr. Dalton. AR 101. Dr. Pinkston also gave the same MRFC. AR 104-106. Neither doctor expressly limited plaintiff to one- to two-step tasks; the only mention of that limitation is in the question posed to Dr. Pinkston for review.

Plaintiff's entire argument is premised on the proposition that Drs. Dalton and Pinkston

"concluded that Singh would be limited to '1-2 step tasks with limited public contact.'" ECF No. 17-1 at 11-12, quoting AR 99 (question posed to Dr. Pinkston). Plaintiff argues that a limitation to 1-2 step tasks would be consistent with jobs requiring only a GED Reasoning Level 1, but at Step 5 the ALJ listed jobs plaintiff could perform that required Reasoning Level 2. Plaintiff's argument is entirely undermined by the fact that Drs. Dalton and Pinkston did not limit plaintiff to 1-2 step tasks. As discussed above, though the portion of the administrative record quoted (AR 99) is confusingly drafted and plaintiff's misreading is understandable, the quoted portion is not a finding of either doctor but a misstated summary in the form of a question drafted by the reviewing disability analyst.

In contrast, Dr. Pinkston found that plaintiff was not limited in either simple or detailed instructions, he was able to "complete simple instructions, to follow directions without additional assistance, and to maintain adequate attention, concentration, persistence, and pace as needed to complete a full work day/work week." AR 104-05. Both Drs. Pinkston and Dalton agreed that plaintiff maintained an "overall mental capacity [that was] adequate for simple tasks in routine settings with limited social demands" (AR 82, 101) and that he was not significantly limited in simple or detailed work and that he could work with occasional public contact and occasional collaborative effort with others (AR 89-91, 104-05). Because the actual opinions of the doctors do not limit plaintiff to 1-2 step tasks, there is no basis for remand here.

B. <u>The ALJ Provided Adequate Reason to Reject Plaintiff's Subjective Testimony</u>

The ALJ provided legally adequate reasons for rejecting plaintiff's subjective testimony regarding his pain and impairments. Evaluating the credibility of a plaintiff's subjective testimony is a two-step process. First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . . In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the pain or fatigue itself is not required. <u>Id.</u> (internal

citations omitted). Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so." Id. (internal citations omitted). The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Id. at 1016.

At the hearing in February of 2019, plaintiff explained he last worked in late 2018 training a family member to be a truck driver. AR 48. Plaintiff described back pain that prevented him from sitting for longer than about 10 minutes at a time, but he explained that changing positions constantly also worsens his pain. AR 53. He testified he spends a lot of time lying down on the floor. AR 55. Plaintiff testified to suffering several heart attacks. AR 56. He gets very fatigued after walking for about 10 minutes. AR 57. If he does a simple errand, like going to the store to buy milk, he is exhausted for the rest of the day. AR 60. Plaintiff stated that he cannot help with household chores. AR 61. His stated his depression is poorly controlled; medications he was given did not work for him, and he could not afford to continue going to so many medical appointments. AR 63. Plaintiff testified he sometimes forgets where he is going when he leaves the house. AR 64. He gets violently angry if someone raises their voice to him. AR 65. He no longer has friends. AR 66.

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" because they were inconsistent with his daily activities, lack of medical treatment, noncompliance with treatments, intermittent work history, inconsistent use of mental health services, and occasional extensive international travel. AR 32. The ALJ found that these factors, "the lack of corroborating objective evidence, and objective evidence revealing that the claimant had relatively normal examinations" warranted discounting plaintiff's subjective testimony as to the severity of his limitations. Id.

Though some of the ALJ's reasoning is insufficient, particularly the unsupported reference to daily activities, the ALJ does provide at least two legally sufficient reasons for discounting plaintiff's testimony: the lack of significant medical treatment and relatively normal exam findings. The ALJ correctly reasoned that "while the medical evidence supports a finding that the claimant has 'severe' impairments, the objective findings on imaging studies and the conservative course of medical treatment do not support the claimant's allegations of an inability to perform all work. Rather, the objective evidence of record supports a finding that the claimant retains the ability to perform a range of work at the light exertional level." AR 32.

Though lack of objective evidence cannot be the sole reason for discounting a plaintiff's subjective testimony, it can be a useful indicator that can help make reasonable conclusions about the effects of a claimant's impairments. See SSR 16-3p, 2017 WL 5180304 at *4 (the ALJ cannot rely solely on the lack of objective evidence, but it remains a "useful indicator to help make reasonable conclusions" about the intensity of symptoms). The Ninth Circuit has consistently affirmed an ALJ's reliance on objective evidence as one factor for rejecting symptom allegations. See, e.g., Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir. 1999). For example, plaintiff testified that his "back is really bad," the "pain really kills [him]," and that he could not sit for "more than ten minutes" (AR 27, 53), but there was no objective evidence to support a severe orthopedic impairment (AR 24, 27, citing AR 392-93 (minimal and mild findings on a lumbar x-ray after plaintiff fell from a ladder), 391-92 (similarly unremarkable x-ray), 666 (normal range of motion, no swelling, no deformity, normal sensation, normal reflexes, normal gait, and negative straight leg raise test)). When the ALJ raised this issue at the hearing, plaintiff's counsel pointed to plaintiff's "recital of pain." AR 27, 55. The ALJ properly referenced the lack of objective medical evidence as one, but not the only, reason to discount plaintiff's testimony.

Second, the ALJ examined plaintiff's treatment history and found it inconsistent with a finding of disability. AR 32. The ALJ found that the treatment history evidenced routine, conservative, and non-emergency treatment. AR 32, Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001) (statements rejected where claimant had "not participated in any significant pain

regimen or therapy program"); Hanes v. Colvin, 651 Fed.Appx. 703, 705 (9th Cir. 2016) (unpublished) (in discounting symptom allegations, "the ALJ supported his conclusion with evidence of [claimant's] conservative treatment plan, which consisted primarily of minimal medication, limited injections, physical therapy, and gentle exercise"), citing Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). Plaintiff's cardiac condition and diabetes were treated with routine medication refills and a stem cell treatment he pursued in Mexico (AR 28, 371, 770, 854 ("feels overall much better now;" "blood sugars are much better controlled now;" "shortness of breath, fatigue, and leg swelling has improved completely")). 20 C.F.R. § 404.1529(c)(3)(iv) (ALJ may consider the effectiveness of medication); Warre v. Comm'r, 439 F.3d 1001, 1006 (9th. Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling").

As to his mental complaints, the ALJ noted one instance of suspected overdose, but plaintiff explained the sequence of events and plaintiff's spouse confirmed that he had not been suicidal. AR 29-30, 304. Otherwise, plaintiff initiated mental health treatment in June 2017, at which time he initially declined psychotropic medications and instead requested a sleep aid, and he participated in several sessions of group therapy, during which he "sat quietly and listened" (AR 317). AR 29, 317, 322-23, 343-45. In 2018, Plaintiff reported that depression was controlled without medication. AR 31, 854. Considering the ALJ's supported reference to plaintiff's minimal treatment history and the lack of objective evidence supporting his subjective testimony, there is no basis for remand here.

C. The ALJ's Rejection of Plaintiff's Spouses Testimony is Legally Supported

Plaintiff argues that the ALJ erred by failing to give reasons for rejecting the testimony of his wife, Hardeep Kaur. ECF No. 17-1 at 16-17. In determining whether a claimant is disabled, an ALJ is required to consider lay witness testimony concerning a claimant's ability to work. Stout, 454 F.3d at 1053. Historically, the Ninth Circuit required an ALJ to give germane reasons for discounting lay witness statements. Molina, 674 F.3d at 1111. However, recently enacted revisions to the Social Security regulations state that for cases filed after March 27, 2017, the ALJ need not articulate its consideration of such evidence in the way it articulates consideration of medical sources. 20 C.F.R. § 404.1520c(d). "Consequently, there is an argument that the ALJ is

no longer required to provide 'arguably germane reasons' for disregarding such statements, as the Ninth Circuit has traditionally required." Gretchen S. v. Saul, 2020 WL 6076265, at *8 (D. Or. Oct. 15, 2020) (under new regulations, "the ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony."); Caleb H. v. Saul, 2020 WL 7680556, at *8 (E.D. Wash. Nov. 18, 2020) (stating that there is an argument that "the ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony" but not deciding the issue). However, at least one court has found that "[a]lthough § 404.1520c(d) states the Commissioner is 'not required to articulate how we consider evidence from nonmedical sources' using the same criteria for medical sources, it does not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements." Joseph M. R. v. Comm'r of Soc. Sec., No. 3:18-CV-01779-BR, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019)

The question of how the 2017 rule change impacts the ALJ's obligations with respect to addressing lay witness testimony is unanswered in the current caselaw. The plaintiff does not address the rule change and seems to assume the pre-2017 regulation case law applies unaltered. The Commissioner takes the position that the ALJ was not required to provide any reasons at all for discounting plaintiff's wife's testimony under the new regulations, and argues that "the decision makes clear that the ALJ *considered* the lay witness testimony because the ALJ cited it in the decision (AR 25, citing Exhibit 5E; see AR 211-16 [5E is the Third Party Function Report from Plaintiff's spouse]) . . . [and she] discussed Plaintiff's spouse's statements and involvement in Plaintiff's treatment (AR 28, citing AR 364 [Plaintiff's spouse called requesting treatment for anxiety and depression; Plaintiff was not currently engaged in any treatment]; AR 30, citing AR 304 [provider spoke with spouse who relayed that Plaintiff was not suicidal and had never been])." ECF No. 18 at 20. The commissioner reasons that in light of the foregoing, "the ALJ met the requirement in the regulations to "consider" the non-medical evidence from Plaintiff's spouse. 20 C.F.R. §§ 404.1513(a), 404.1529(a), 404.1545(a)(3); SSR 16-3p." Id.

While acknowledging that the state of the law is somewhat unsettled, the undersigned concludes that in this case the issue of the 2017 rule change need not be reached because even

under the old and more restrictive standard, the ALJ did not err or, if she did, the error was harmless. This is true because the function report submitted by plaintiff's spouse (AR 202-10) does not materially differ from plaintiff's own subjective testimony, and therefore the rationale applied to discounting his testimony could equally be applied to the lay witness testimony. Molina, 674 F.3d at 1117 (applying harmless error to ALJ's lack of articulation related to lay witness statements); Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ's valid reasons for rejecting claimant's testimony applied similarly to lay testimony). Accordingly, there is no error, or harmless error at most, and there is no basis for remand.

D. The ALJ Did Not Err at Step Five

Plaintiff argues the ALJ erred at step five because she did not include, in hypotheticals posed to the vocational expert, plaintiff's "credible allegations," limitations described by lay witnesses, and critical aspects of the limitations assessed by state agency reviewing doctors. ECF No. 17-1 at 17. The five-sentence argument is underdeveloped and fails in any case because it relies on the court finding error on plaintiff's other allegations, which it did not, as discussed above. There is no basis for remand here.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 18), is GRANTED; and

3. The Clerk of the Court shall enter judgment for defendant and close this case.

DATED: September 7, 2021

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE